**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BANK OF NEW YORK MELLON,

        Plaintiff,

vs.

NEVADA ASSOCIATION SERVICES, *et al.*,

        Defendants.

Case No.: 2:17-cv-00022-GMN-BNW

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 29), filed by Defendant Jasmine Homeowners Association ("HOA"). Plaintiff Bank of New York Mellon ("BNYM") filed a Response, (ECF No. 32), and HOA filed a Reply, (ECF No. 39).

Also pending before the Court is the Motion for Summary Judgment, (ECF No. 30), filed by BNYM. Defendants HOA and Thomas Jessup, LLC ("TJ") filed Responses, (ECF Nos. 31, 33), and BNYM filed a Reply, (ECF No. 36).

Also pending before the Court is the Counter Motion for Summary Judgment, (ECF No. 35), filed by TJ. BNYM filed a Motion to Strike, (ECF No. 37), or, in the alternative, a Response, (ECF No. 38). TJ filed a Response to the Motion to Strike, (ECF No. 41), and a Reply, (ECF No. 42). BNYM filed a Reply in support of the Motion to Strike, (ECF No. 43).

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** HOA's Motion for Summary Judgment. The Court **DENIES** BNYM's Motion for Summary Judgment and Motion to Strike. The Court **GRANTS** TJ's Motion for Summary Judgment.

**I.**     **<u>BACKGROUND</u>**

This case arises from the non-judicial foreclosure sale of real property located at 5855 Valley Drive #1054, North Las Vegas, Nevada 89031 (the "Property"). (*See* Deed of Trust ("DOT"), Ex. A to BNYM's Mot. Summ. J. ("MSJ"), ECF No. 30-1). On December 6, 2004,

Ernest and Rhonda Gehrich (collectively, "Borrowers") purchased the Property by way of a loan in the amount of $132,250.00 secured by a deed of trust ("DOT"), naming Mortgage Electronic Registration Systems, Inc. ("MERS") as the original beneficiary, recorded on December 9, 2004. (*Id.*). BNYM gained a beneficial interest in the DOT through an assignment recorded on January 20, 2012. (*See* Assignment, Ex. B to BNYM's MSJ, ECF No. 30-2).

Borrowers filed a Chapter 7 bankruptcy petition with the United States Bankruptcy Court for the District of Nevada on December 31, 2010. (*See* Bankr. Docket, Ex. C to BNYM's MSJ, ECF No. 30-3). Borrowers listed the Property as an asset of the bankruptcy estate. (*See* Vol. Bankr. Pet., Ex. D to BNYM's MSJ at 13, ECF No. 30-4). The bankruptcy case concluded on October 15, 2012, and no creditor moved to lift the automatic stay during the case's pendency. (*See* Bankr. Docket).

Upon Borrowers' failure to stay current on their payment obligations, Nevada Association Services, Inc. ("NAS"), on behalf of HOA, initiated foreclosure proceedings by recording a notice of delinquent assessment lien on January 20, 2012. (*See* Notice of Delinquent Assessment Lien, Ex. F to BNYM's MSJ, ECF No. 30-9). NAS subsequently recorded a notice of default and election to sell on March 26, 2012. (Notice of Default, Ex. G to BNYM's MSJ, ECF No. 30-10).

On April 20, 2012, the law firm of Miles, Bauer, Bergstrom & Winters LLP ("Miles Bauer"), on behalf of Bank of America, N.A. ("BANA"), the servicer of the loan, offered to satisfy the superpriority portion of HOA's lien and requested HOA refrain from taking further enforcement action so BANA could have the opportunity to resolve the matter with HOA. (*See* Miles Bauer Letter, Ex. 1 to Miles Bauer Aff., ECF No. 30-11). Rather than respond, NAS proceeded with foreclosure by recording a notice of foreclosure sale on October 26, 2012. (Notice of Foreclosure Sale, Ex. K to BNYM's MSJ, ECF No. 30-14). On January 3, 2013, TJ,

recorded a foreclosure deed indicating that it purchased the Property for $6,900.00 on December 28, 2012. (Foreclosure Deed, Ex. L to BNYM's MSJ, ECF No. 30-15).

On January 3, 2017, BNYM filed the Complaint, which asserts the following causes of action arising from the foreclosure and subsequent sale of the Property: (1) quiet title against NAS, HOA, and TJ; (2) breach of NRS 116.1113 against HOA and NAS; (3) wrongful foreclosure against HOA and NAS; (4) injunctive relief against TJ; and (5) deceptive trade practices against HOA and NAS. (Compl. ¶¶ 27–79, ECF No. 1). In its Answer, TJ asserts counterclaims against BNYM for quiet title and declaratory relief. (Answer ¶¶ 15–27, ECF No. 11).

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in

1 his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

BNYM moves for summary judgment on the following grounds: (1) its failure to tender the superpriority portion of HOA's lien may be excused because HOA or NAS would have rejected tender; (2) the sale failed to extinguish the DOT because HOA foreclosed on the subpriority portion of its lien; (3) NRS 116.31168 violates due process facially and as-applied because it neither requires nor provided adequate notice to BNYM; (4) the HOA's non-judicial foreclosure sale is void because it violated the automatic bankruptcy stay; and (5) the sale should be set aside in equity under *Shadow Canyon*. (BNYM's MSJ, 6:1–15:12, ECF No. 30).

HOA argues that it is entitled to summary judgment because: (1) it complied with the constitutional non-judicial foreclosure scheme in NRS Chapter 116; (2) BNYM's wrongful foreclosure claims are time-barred; (3) BNYM cannot seek equitable remedies because it still has remedies available at law against Borrowers; (4) BNYM's quiet title claims fail because it only had a lien, not title, to the property; (5) sale for an inadequate price is not grounds for setting aside the foreclosure sale; (6) compliance with NRS 116 cannot support a wrongful foreclosure claim; and (7) BNYM's deceptive trade practices claim fails as a matter of law. (HOA's MSJ 9:1–25:5, ECF No. 29).

TJ's Counter Motion for Summary Judgment argues that it should maintain fee simple title in the Property. (TJ's Counter MSJ, 2:25–9:2, ECF No. 35).  BNYM seeks to have TJ's Motion stricken because it is untimely. (Mot. Strike 2:22–3:9, ECF No. 38).

The Court first addresses BNYM and HOA's Cross-Motions for Summary Judgment before turning to TJ's Motion.

//

//

### A. Constitutionality and Breach of NRS Chapter 116

The parties dispute whether the Ninth Circuit's holding in in *Bourne Valley* compels the Court to find that BNYM's DOT survived HOA's foreclosure sale. *See Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016) (holding NRS Chapter 116's opt-in notice scheme is facially unconstitutional due to the absence of mandatory notice provisions); (*see also* BNYM's MSJ 7:24–11:23); (HOA's Resp. to BNYM's MSJ 10:1–12:16).

As this Court has previously explained, in light of the Nevada Supreme Court's decision in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248, 1252 (Nev. 2018) (en banc), *Bourne Valley* is no longer controlling law with respect to NRS Chapter 116's notice provisions and, consequently, its finding of facial unconstitutionality. *See Bank of Am., N.A. v. Falcon Point Ass'n*, 347 F. Supp. 3d 592, 597-99 (D. Nev. 2018). To the extent there is any lingering doubt, the Ninth Circuit Court of Appeals has recently put the issue to rest. *See Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 623-24 (9th Cir. 2019) ("*Bourne Valley* no longer controls the analysis, and we conclude that Nev. Rev. Stat. § 116.3116 *et seq.* is not facially unconstitutional on the basis of an impermissible opt-in notice scheme."). Accordingly, to the extent BNYM seeks to prevail based upon *Bourne Valley*, the Court rejects this theory.

Likewise, regarding BNYM's as-applied challenge, it is of no consequence that the notice failed to specify the superpriority portion of HOA's lien that could be tendered. As another court in this District recognized, "[t]he fact that a notice does not identify a superpriority amount is of no consequence because Chapter 116 gives lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests." *Bank of Am., N.A. v. Saticoy Bay LLC Series*, No. 2:17-cv-02808-APG-CWH, 2018 U.S. Dist. LEXIS 112753, 2018 WL 3312969, at *3 (D. Nev. July 5, 2018). The Nevada Supreme Court has also rejected the argument that foreclosure notices must always state the superpriority

portion, reasoning, in part, that "[t]he notices went to the homeowner and other junior lienholders, not just [the first deed of trust holder], so it was appropriate to state the total amount of the lien." *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 418 (Nev. 2014) (en banc). Therefore, absent additional evidence suggesting fraud, oppression, or unfairness, HOA's failure to explicitly state the superpriority portion of the lien does not justify setting aside the sale for the alleged due process violations.

### B. Quiet Title

Under NRS 116.3116, the holder of a first deed of trust may pay off the superpriority portion of an HOA's lien to prevent the foreclosure sale from extinguishing the deed of trust. *See SFR Invs. Pool 1*, 334 P.3d at 414. "[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc). "[T]he superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at 117; *see also Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 373 P.3d 66, 72 (Nev. 2016).

Here, it is undisputed that BNYM did not tender the superpriority portion of HOA's lien to prevent the extinguishment of the DOT. (*See* BNYM's MSJ 4:15–5:8) (explaining that Miles Bauer offered to tender the superpriority amount but failing to indicate that any sum was tendered). Rather, BNYM argues that title should be quieted in its favor because: (1) Miles Bauer's offer to pay the superpriority portion of the lien preserved BNYM's DOT under *Bank of America N.A. v. Thomas Jessup LLC Series VII*, 435 P.3d 1217 (Nev. 2019) ("*Jessup*"); and (2) HOA failed to foreclose on the superpriority portion of its lien. (BNYM's MSJ 6:1–7:23).

#### 1. BNYM's Attempt to Tender the Superpriority Amount

BNYM claims that under the Nevada Supreme Court's decision in *Jessup*, Miles Bauer's offer to tender the superpriority portion of HOA's lien operated to extinguish the superpriority

portion. (BNYM's MSJ 6:1–24). However, a "letter offering to pay the superpriority lien amount, once that amount [is] determined, [is] not sufficient to constitute a valid tender." *Bank of Am., N.A. v. TRP Fund IV, LLC*, 422 P.3d 712 (Nev. 2018).

Here, BNYM sent a letter indicating a willingness to pay the superpriority amount. (*See* Miles Bauer Letter, Ex. 1 to Miles Bauer Aff., ECF No. 30-11). BNYM does not assert it tendered payment to HOA. Because BNYM only declared its willingness to pay and did not present actual payment, there was no tender that prevented HOA from extinguishing BNYM's DOT through foreclosure. *See Nationstar Mortg., LLC v. Melvin Grp., LLC*, 422 P.3d 711 (Nev. 2018) ("Absent evidence that the HOA or its agent affirmatively thwarted appellants' efforts to tender the superpriority amount, the alleged futility of any such effort does not establish unfairness or oppression."); *see also Bank of New York Mellon v. S. Highlands Cmty. Ass'n*, No. 2-16-cv-1177-JCM-VCF, 2018 WL 1021333, at *6–*7 (D. Nev. Feb. 22, 2018) (finding that BNYM did not offer any evidence as to tender when BNYM/its predecessor-in-interest sent a letter requesting the amount for the nine-months' worth of assessments owed).

In *Jessup*, the Nevada Supreme Court introduced an exception to the general rule: a first deed of trust holder is excused from tendering the superpriority amount where an HOA agent represents that it would reject any such tender if attempted. *Jessup*, 435 P.3d at 1220. In the underlying facts of that decision, the deed of trust holder sent a letter requesting the amount of the HOA superpriority lien. *Id.* at 1219–20. While the Nevada Court held that a mere offer to pay the "yet-to-be-determined superpriority amount was not sufficient to constitute valid tender," it also held that the tender obligation was excused because the HOA's agent represented to the deed of trust holder that any attempted tender would be rejected. *Id.* at 1220. Specifically, the HOA's agent, Absolute Collection Services, LLC ("ACS"), responded in writing to the lender's request for the payoff amount, stating "a 9-month statement of Account is not valid," until the lender—rather than HOA—initiates foreclosure. *Id.* ACS's

correspondence did not expressly state that any tender would be rejected, but the Nevada Supreme Court concluded this was "the only reasonable construction" of ACS's language. *Id.* Given the futility of tender, the Court found it immaterial that the deed of trust holder took no further action to preserve its deed of trust in the ten-month window between ACS's rejection and the foreclosure sale. *Id.* at 1218–19. Accordingly, the lender's offer to pay the "yet-to-be-determined superpriority amount," combined with "ACS's rejection of that offer, operated to cure the default as to [the superpriority] portion of the lien such that the ensuing foreclosure sale did not extinguish the first deed of trust." *Id.* at 1220.

Applying *Jessup* here, the Court finds that Miles Bauer's offer to tender the superpriority amount of HOA's lien did not extinguish that amount. The *Jessup* Court's excusal of tender was based upon the lender's offer to pay the "yet-to-be-determined superpriority amount" *and* the HOA agent's "rejection of that offer." *Id.* The problem for BNYM here is the second requirement. Unlike ACS's representation that tender would be futile in *Jessup*, NAS, in the present case, never responded to Miles Bauer's letter. Because the *Jessup* Court tethered its holding to ACS's express communication of futility, the Court is hesitant to give that decision the expansive interpretation BNYM urges. *See id*. at 1218 ("[F]ormal tender is excused when the party entitled to payment represents that if a tender is made, it will be rejected . . . . [S]uch a representation excuses the requirement of making a formal tender."). Indeed, subsequent decisions from the Nevada Court of Appeals and courts in this District have similarly recognized the limitations of *Jessup*'s holding. *See, e.g.*, *7510 Perla Del Mar Ave Tr. v. Bank of Am., N.A.*, No. 75603-COA, 2019 WL 2461736, at *1 (Nev. App. June 11, 2019) ("To excuse Bank of America's obligation to provide valid tender, HOA must have actually rejected an attempt at tender."); *Bank of Am., N.A. v. Rainbow Bend Homeowners Ass'n*, No. 3:17-cv-00049-MMD-WGC, 2019 WL 2601561, at *5 (D. Nev. June 25, 2019) ("In the absence of evidence tantamount to an actual rejection by the HOA, BANA's argument does

not fall within the purview of *Jessup*."). Accordingly, the Court concludes that Miles Bauer's letter to NAS, standing alone, does not constitute valid tender, and the narrow exception recognized in *Jessup* is inapplicable to this case.

### 2. The Purported Sub-Priority Sale

BNYM argues, without citation to any evidence, that HOA subjectively intended a subpriority-only sale. (BNYM's MSJ 6:25–7:23). This assertion, however, does not support an inference that HOA did not intend to foreclose on its superpriority lien. The foreclosure notices, as well as the foreclosure deed, constitute prima facie evidence that HOA foreclosed on the superpriority portion of its lien. The notice of default and election to sell states that Borrowers failed to pay monthly assessments due through March 15, 2012, denoting that HOA's lien was comprised of nine months' worth of common assessments. (See Notice of Default, Ex. G to BNYM's MSJ, ECF No. 30-10). The notice of foreclosure sale specifies that the winning bidder will acquire "all right, title, and interest," to the Property, and TJ's foreclosure deed provides that HOA, in fact, conveyed "right, title and interest" in the Property "without warranty express or implied." (See Notice of Foreclosure Sale, Ex. K to BNYM's MSJ, ECF No. 30-14); (Foreclosure Deed, Ex. L to BNYM's MSJ, ECF No. 30-15). These representations demonstrate that HOA did not elect to conduct a subpriority-only sale. *See Bank of New York Mellon v. K & P Homes, LLC*, 404 P.3d 403, 2017 Nev. Unpub. LEXIS 921, 2017 WL 4790995, at *1 (Nev. 2017) (unpublished) (holding that the foreclosures notice's reference to unpaid common assessments coupled with a foreclosure deed language stating that HOA conveys "all its right, title and interest" constitute prima facie evidence that HOA foreclosed on the superpriority portion of its lien.); *PNC Bank, Nat'l Ass'n v. Saticoy Bay LLC Series 9320 Mt. Cash Ave. UT 103*, 395 P.3d 511, 2017 Nev. Unpub. LEXIS 395, *4, 2017 WL 2334492, at *2 (Nev. 2017) (unpublished) ("[W]e conclude that the language in the pre-sale notices constituted prima facie evidence that the HOA was foreclosing on a lien comprised of

monthly assessments."). Thus, HOA properly foreclosed on the superpriority portion of its lien, thereby extinguishing BNYM's DOT.

### C. Wrongful Foreclosure

As alternative relief, BNYM requests that the Court set aside the foreclosure sale in equity. (*See* Compl. 13:17–18). BNYM argues the sale should be set aside because: (1) the Property sold for a grossly inadequate price; (2) BANA could not tender the superpriority amount of HOA's lien because NAS refused to provide it; (3) HOA's prior statements and CC&Rs indicated that the foreclosure sale would not extinguish the DOT; and (4) NAS and HOA did not seek to lift the automatic bankruptcy stay or notify Debtors' bankruptcy attorney before proceeding with the sale. (BNYM's MSJ 13:15–15:12).

Courts possess the inherent power, based in equity, to settle quiet title disputes. *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1110 (Nev. 2016). In determining whether an HOA's non-judicial foreclosure sale may be set aside on equitable grounds, the relevant inquiry is "whether the sale was affected by fraud, unfairness, or oppression." *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 646 (Nev. 2017). The burden of establishing that a foreclosure sale should be set aside rests with the party challenging the sale. *Id.* at 646.

#### 1. Grossly Inadequate Sale Price

BNYM argues that the Court should equitably set aside the sale based upon the Property's grossly inadequate sale price. (BNYM's MSJ 13:25–14:13). According to BNYM, TJ's purchase of the Property for $6,900 represented 9% of the Property's fair market value, which—coupled with other indicia of unfairness—justifies setting aside the sale. (*Id.*).

"[M]ere inadequacy of price is not in itself sufficient to set aside the foreclosure sale, but it should be considered together with any alleged irregularities in the sales process to determine whether the sale was affected by fraud, unfairness, or oppression." *Shadow Canyon*, 405 P.3d at

648 (declining to adopt a bright-line rule to equitably set aside a sale "based solely on price."). Because a low sale price alone is an insufficient as a matter of law to justify setting aside a foreclosure sale, the Court turns to BNYM's additional allegations of unfair or oppressive conduct.

### 2. Failure to Identify the Superpriority Amount

BNYM asserts that the foreclosure sale should be set aside because HOA failed to respond to the Miles Bauer letter offering to tender the superpriority portion of HOA's lien. (BNYM's MSJ 14:14-15:2). Failure to provide the superpriority amount is not enough to constitute fraud, oppression, or unfairness. As another court in this District recognized, "[t]he fact that a notice does not identify a superpriority amount is of no consequence because Chapter 116 gives lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests." *Bank of Am., N.A. v. Saticoy Bay LLC Series*, No. 2:17-cv-02808-APG-CWH, 2018 U.S. Dist. LEXIS 112753, 2018 WL 3312969, at *3 (D. Nev. July 5, 2018). Similarly, the Nevada Supreme Court has rejected the argument that foreclosure notices must state the superpriority portion, reasoning, in part, that "[t]he notices went to the homeowner and other junior lienholders, not just [the first deed of trust holder], so it was appropriate to state the total amount of the lien." *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 418 (Nev. 2014) (en banc). Therefore, HOA's failure to identify the superpriority portion of the lien is not sufficient, as a matter of law, to justify setting aside the sale.

### 3. Mortgagee Protection Clause

BNYM asserts that HOA's repeated representations, including within its CC&Rs, that the DOT would be preserved constitute unfairness and oppression. (BNYM's MSJ 15:3–7). The alleged misrepresentations are insufficient as a matter of law to constitute unfairness because the Nevada Supreme Court has repeatedly held that an HOA's CC&RS, including those that provide for mortgagee protection, do not supersede the statutory structure of NRS

Chapter 116. *See SFR Invs. Pool 1*, 334 P.3d at 418-19 ("'Nothing in [NRS] 116.3116 expressly provides for a waiver of the HOA's right to a priority position for the HOA's super priority lien.' . . . The mortgage savings clause thus does not affect NRS 116.3116(2)'s application in this case.") (citation omitted); *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings*, 373 P.3d 66, 73-74 (Nev. 2016) (holding that an HOA's CC&R provisions in contravention of NRS Chapter 116 "are superseded by statute and are thus negated."); *see also RLP-Vervain Court, LLC v. Wells Fargo, No. 65255*, 2014 Nev. Unpub. LEXIS 2045, 2014 WL 6889625, at *1 (Nev. Dec. 5, 2014) (declining to consider certified question of "whether an association may validly subordinate its assessment lien" in its CC&Rs because "there is controlling Nevada precedent" on point).

Additionally, BNYM does not put forth any evidence that HOA's statements or CC&Rs affected the Property's sale price. Rather, BNYM conclusorily asserts that the statements were unfair and oppressive.[1] (BNYM's MSJ 15:5–7). Even if HOA made the alleged misrepresentations, BNYM has not demonstrated its entitlement to equitable relief because it has failed to provide any evidence that HOA's CC&Rs or other statements contributed to the inadequate price, by, for example, causing chilled bidding. *See US Bank, N.A. v. SFR Invs. Pool 1, LLC*, 414 P.3d 809, 2018 Nev. Unpub. LEXIS 220, *4, 2018 WL 1448248, at *2 (Nev. 2018) (unpublished) (explaining it is "presumed that any potential bidders also were aware of NRS 116.1104.") (*citing Smith v. State*, 151 P. 512, 513 (Nev. 1915) ("Every one is presumed to know the law and this presumption is not even rebuttable."))

//

//

---

[1] BNYM string-cites a number of exhibits outside of the CC&Rs—without pincites to particular statements—that it alleges "gave assurances over and over again" that "the deed of trust was secure." (*See* BNYM's MSJ 15:3–5). The exhibits do not appear to contain explicit assurances from HOA that the BNYM's DOT would survive the foreclosure sale at issue.

### 4. Violation of Bankruptcy Stay

BNYM argues that the foreclosure sale should be set aside because the sale violated the bankruptcy stay. (BNYM's MSJ 11:24–13:14). HOA responds that the complained-of notices were recorded after discharge, and even if the notices violated the automatic stay, BNYM does not have standing to challenge violations of the automatic stay. (HOA Resp. 10:17–12:16). BNYM contends that it has standing because "creditors like BNY have standing to challenge violations of the automatic stay." (BNYM's Reply 10:17–12:3).

"The automatic stay provisions of the bankruptcy code are designed to protect debtors only, and do not afford non-parties to the bankruptcy case any rights." *Bergsrud v. Bank of Am., N.A.*, No. 2:13-cv-998-JCM-VCF, 2014 U.S. Dist. LEXIS 20461, 2014 WL 664662, at *3 (D. Nev. Feb. 19, 2014); see also *In re Pecan Groves of Arizona*, 951 F.2d 242, 245 (9th Cir. 1991) ("[S]ection 362 is intended solely to benefit the debtor estate.").

Here, BNYM's only alleged relationship with the bankruptcy proceedings is that Borrowers also possesses an interest in the Property for which BNYM seeks to quiet title. (*See* BNYM's MSJ 11:24–13:14). This is insufficient to confer standing. *See, e.g.*, *U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC*, No. 2:15-cv-1527-JCM-CWH, 2018 U.S. Dist. LEXIS 111819, 2018 WL 3312980, at *7 (D. Nev. July 5, 2018). Accordingly, to the extent BNYM seeks to void the foreclosure sale based upon a violation of the automatic stay, BNYM lacks standing to assert that theory. And, as another court in this District has noted, because BNYM does not have standing to assert the bankruptcy stay was violated, "[i]t follows that it cannot use this argument as a shield now" as an indicia of unfairness under *Shadow Canyon*. *See Wells Fargo Bank, N.A. v. SFR Invs. Pool 1, LLC*, No. 3:17-cv-00332-LRH-WGC, 2019 U.S. Dist. LEXIS 29697, 2019 WL 919586 at *10 (D. Nev. Feb. 25, 2019).

//
//

### 5. Statute of Limitations

Given that the Court grants HOA summary judgment against BNYM's wrongful foreclosure claims, the Court need not reach HOA's argument that the claims are time-barred. (*See* HOA's MSJ 13:24–14:14).

### D. Deceptive Trade Practices

HOA seeks summary judgment against BNYM's deceptive trade practices claim, arguing that the claim fails as a matter of law because: (1) The Nevada Deceptive Trade Practices Act ("NDTPA") does not apply to non-judicial foreclosures; (2) the claim sounds in fraud and is not pled with particularity under Federal Rule of Civil Procedure 9(b); (3) the allegations are based on a legal mistake, which does not constitute fraud; and (4) BNYM did not justifiably rely on the allegedly fraudulent misrepresentation. (HOA's MSJ 21:6–25:1). BNYM responds that: (1) the NDTPA does apply to pre-sale transactions involving real property; (2) its claim is properly pled; and (3) the claim is valid because it relates to services provided by HOA. (BNYM's Resp. to HOA's MSJ 11:4–13:6).

As an initial matter, the Court concludes that some provisions of the NDTPA apply to non-judicial foreclosure sales. The Complaint asserts claims for deceptive trade practices under NRS 598.0915(15), NRS 598.092(8), and NRS 598.0923(2)-(3). While NRS 598.0923(2)–(3) are not applicable because the subsections expressly apply to "the sale or lease of goods or services," the remaining two provisions can apply to the non-judicial foreclosure sale of real property. *See Bank of N.Y. Mellon v. Nev. Ass'n Servs.*, No. 2:16-cv-370-APG-BNW, 2020 U.S. Dist. LEXIS 24026, 2020 WL 704901 at *4–*5 (D. Nev. Feb. 12, 2020); *Bank of N.Y. Mellon v. Sierra Ranch Homeowners Ass'n*, No. 2:15-cv-1914-JCM-PAL, 2017 U.S. Dist. LEXIS 17242, 2017 WL 3174904 at *5–*6 (D. Nev. July 26, 2017).

However, the Court agrees with HOA that the claim is not adequately pled in the Complaint. BNYM's claim sounds in fraud and must be pled with particularity. *Bank of N.Y.*

*Mellon v. Sierra Ranch Homeowners Ass'n*, No. 2:15-cv-1914-JCM-PAL, 2017 U.S. Dist. LEXIS 17242, 2017 WL 3174904 at *5–*6 (D. Nev. July 26, 2017). Pleading with particularity requires that the Complaint provide plausible allegations of "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). BNYM's Complaint does not identify with particularity the content of HOA's false statements or how BNYM relied on the allegedly false statements. Accordingly, the Court dismisses BNYM's NDTPA claim with leave to amend.

### E. TJ's Motion for Summary Judgment

#### 1. BNYM's Motion to Strike

BNYM has moved to strike TJ's Counter Motion for Summary Judgment because TJ filed the Motion after the Scheduling Order's dispositive motion deadline. (BNYM's Mot. Strike 2:22–3:9, ECF No. 37). TJ argues that the Motion to Strike should be denied because its Motion raises the same issues as BNYM's underlying Motion for Summary Judgment, BNYM will not sustain any prejudice if the Motion is heard, and hearing the Motion serves the interest of judicial economy. (TJ's Resp. to BNYM's Mot. Strike 2:2–3:20). The Court denies BNYM's Motion to Strike in the interest of judicial economy.

Generally, the deadline for dispositive motions may only be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). However, "[w]here a court determines that it would be more efficient—not just for the parties but particularly for the court—to consider a belated motion for summary judgment rather than strike it, the Rule 16 'good cause' requirement does not stand in the way. *Dayton Valley Inv., LLC v. Union Pac. R.R.*, 664 F. Supp. 2d 1174, 1179 (D. Nev. 2009). "Indeed, to hold otherwise 'would undermine the court's ability to control its docket.'" *Id.* (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)) Given that the issues raised in TJ's Motion for Summary Judgment, save the applicable statute of limitations, are the same as those in BNYM and HOA's Motions,

the efficient course is for the Court to consider TJ's tardy Counter Motion rather than strike it. *See id.* (explaining that if "the Court must inevitably address" the issues raised in the late summary judgment motion, then "there is 'good cause' within the meaning of Rule 16(b) for extending the deadline for dispositive motions to accommodate [a party's] otherwise untimely counter-motion for summary judgment [].").

### 2. Declaratory Relief

TJ seeks a declaration that it took title to the Property free and clear of BNYM's DOT. (*See* TJ's Counter MSJ 3:6–9:2, ECF No. 35); (Answer ¶¶ 15–27, ECF No. 11). Given that this Order grants HOA summary judgment against BNYM's quiet title and wrongful foreclosure claims, the result is that TJ purchased the Property unencumbered by BNYM's interest. Accordingly, the Court grants TJ the relief requested.[2]

## IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that HOA's Motion for Summary Judgment, (ECF No. 29) is **GRANTED in part** and **DENIED in part**. The Court grants HOA summary judgment against BNYM's quiet title, breach of NRS 116.1113, and wrongful foreclosure claims. The Court grants dismissal of BNYM's deceptive trade practices claim with leave to amend. BNYM may file an amended complaint curing the deficient pleading of the deceptive trade practices claim within twenty-one (21) days from entry of this Order. Failure to file an amended complaint within the time allowed will result in dismissal with prejudice

**IT IS FURTHER ORDERED** that BNYM's Motion for Summary Judgment, (ECF No. 30), is **DENIED**.

**IT IS FURTHER ORDERED** that BNYM's Motion to Strike, (ECF No. 37), is **DENIED**.

---

[2] As a result, if BNYM proceeds with its deceptive trade practices claim, its potential recovery is limited to monetary damages.

**IT IS FURTHER ORDERED** that TJ's Counter Motion for Summary Judgment, (ECF No. 35), is **GRANTED**.

**DATED** this __2__ day of March, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court